2023 IL App (1st) 220291-U
No. 1-22-0291

FIRST DIVISION
April 24, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| ESTATE OF GEORGE ISSA, JR., deceased, | Appeal from the Circuit Court of Cook County, Illinois County Department, Law Division |
| Plaintiff-Appellant, | |
| v. | No. 2018 L 013582 |
| WILLIAM H. EGAN, M.D. and PRESENCE BEHAVIORAL HEALTH, formerly known as RESURRECTION BEHAVIORAL HEALTH, | The Honorable Moira S. Johnson, Judge Presiding. |
| Defendants-Appellees. | |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Hyman and Coghlan concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We affirm the order of the circuit court dismissing Plaintiff's amended petition to vacate the voluntary dismissal with prejudice of his refiled case. We affirm the circuit court's findings that Plaintiff failed to exercise due diligence and the court's determination that 735 ILCS 5/2-1401 does not allow for the relief sought.

¶ 2     Plaintiff-Appellant Estate of George Issa, Jr. ("the Estate") appeals from the circuit court's

granting of Defendants-Appellees William H. Egan, M.D.'s ("Egan") and Presence Behavioral

Health's ("Presence") 735 ILCS 5/2-619.1 motions to dismiss the Estate's amended petition

pursuant to 735 ILCS 5/2-1401 to vacate the voluntary dismissal of his refiled case with prejudice. The circuit court granted the motions to dismiss on the grounds that Plaintiff failed to exercise due diligence in filing the petition, and because a Section 2-1401 petition is not a proper means to vacate a voluntary dismissal order. For the following reasons, we affirm the circuit court's order.

¶ 3                                      BACKGROUND

¶ 4                                    Prior Lawsuits

¶ 5     This is a refiled medical malpractice suit arising from the death of George Issa, Jr. The brother of the decedent and administrator of his estate, Faize Issa, originally filed suit against Egan and Presence in January 2017. That case, docketed as 17 L 15, was dismissed for want of prosecution in December 2017.

¶ 6     In December 2018, Faize Issa refiled his complaint in a case docketed as 18 L 13582. On February 20, 2019, the circuit court entered an order allowing Issa's counsel to withdraw and granting Issa's motion to voluntarily dismiss the case with prejudice. The motion to voluntarily dismiss was prepared and filed by withdrawing counsel.

¶ 7     Issa obtained new counsel, and on October 2, 2019, filed a Section 2-1401 petition to vacate the February 20, 2019 order granting his motion to voluntarily dismiss the refiled case with prejudice. In that petition, Issa argued that after his original 2017 suit was dismissed for want of prosecution, his prior counsel told him that he intended to withdraw from further representation of the Estate, but he agreed to refile the case before doing so. Prior counsel refiled the case as 18 L 13582, but failed to obtain service on Egan and Presence. Issa further stated in his petition that withdrawing counsel never explained to him why service of process on the defendants was never effectuated, never offered to prepare alias summons, and never explained to Issa that service could be attempted multiple times.

¶ 8 In addition to failing to explain the issues pertaining to service, Issa stated that withdrawing counsel never explained to him that the court would not immediately dismiss the refiled case, but would allow Issa time to obtain new counsel and attempt service on the defendants again. Issa further stated that he attended the court hearing on February 20, 2019 with withdrawing counsel, and was never made to understand that his case did not have to be dismissed at that point; he therefore did not attempt to prevent withdrawing counsel from asking the court to dismiss the case.

¶ 9 On October 17, 2019, the circuit court entered an order granting Issa's Section 2-1401 petition, vacating the February 20, 2019 order, and granting Issa leave to issue alias summons for service of the complaint on both defendants. Egan was subsequently served with the complaint on October 24, 2019, and Presence was served on November 4, 2019.

¶ 10 In January 2019, Egan filed a combined motion to vacate the order granting the Section 2-1401 petition and to dismiss Plaintiff's refiled complaint pursuant to Section 2-619. Presence subsequently filed its own motion to vacate and dismiss, raising the same arguments as Egan. In his motion, Egan argued that the trial court lacked jurisdiction to grant Plaintiff's 2-1401 petition, because Plaintiff failed to properly serve notice of his 2-1401 petition on Defendants. Accordingly, Egan argued, the October 17, 2019 order granting Plaintiff's 2-1401 petition was void and should be vacated. Egan further argued that because the October 17, 2019 order was void, the February 20, 2019, order dismissing Plaintiff's complaint with prejudice remained in effect. As a result, Egan contended, Plaintiff's refiled complaint was subject to dismissal under Section 2-619(a)(4) as being barred by a prior judgment. 735 ILCS 5/2-619(a)(4) (West 2020). In addition, Egan argued that because Plaintiff refiled his claims in December 2018, he had exercised the one refiling permitted under Section 13-217 and thus, dismissal of his refiled complaint was also appropriate under Section 2-619(a)(9). 725 ILCS 5/13-217 (West 2020); 735 ILCS 5/2-619(a)(9) (West 2020).

¶ 11    The circuit court granted Defendants' motions on July 15, 2020. In its order, the court stated:

> The order entered October 17, 2019 which granted Plaintiff's Petition [under] 735 ILCS 5/2-1401 is vacated. The order of February 20, 2019 dismissing this matter with prejudice remains in effect. This Court did not have jurisdiction to grant Plaintiff's 735 ILCS 5/2-1401 [petition] presented on October 17, 2019 as there was no service upon Defendants *** pursuant to Illinois Supreme Court Rules 105 and 106.

¶ 12    Plaintiff moved for reconsideration and modification of the court's July 2020 order, arguing that the court should have dismissed the 2-1401 petition without prejudice, rather than vacating its October 17, 2019 order. Plaintiff also renewed his contention that the October 17, 2019 order simply corrected the erroneous order of February 20, 2019 that dismissed his refiled case with prejudice. The circuit court denied the motion to reconsider or modify its order, and Plaintiff appealed.

¶ 13                                   Prior Appeal

¶ 14    On appeal, Plaintiff[1] argued that the circuit court erred in its July 15, 2020 order by (1) vacating the October 17, 2019 order rather than dismissing the Section 2-1401 petition without prejudice and allowing him to refile and properly serve the petition; and (2) by dismissing Plaintiff's complaint, because by vacating the October 2019 order, the court left no pending complaint to substantively dismiss.[2] Plaintiff also argued that the court erred in denying his motion to reconsider and modify.

¶ 15    We affirmed in part and reversed in part the judgment of the circuit court. *See Estate of George Issa v. William H. Egan, M.D.*, 2021 IL App (1st) 200853-U (June 22, 2021). We

---

[1] In the prior appeal, Faize Issa was proceeding as Plaintiff-Appellant both individually and as administrator of the Estate of George Issa. In the present appeal, the case caption identifies the Estate as sole Plaintiff-Appellant. To clarify, we note that Faize Issa is the administrator of the Estate in the present appeal as well, and references to Plaintiff's actions in the present appeal refer to Faize Issa, although he is not individually a party to this matter.

[2] This was because, according to Plaintiff, the case was returned to its status as of the circuit court's February 2019 order granting voluntary dismissal with prejudice.

determined that the court did not err in declining to dismiss Plaintiff's 2-1401 petition without prejudice or deny his motion to reconsider. Plaintiff did not provide any authority for his contention that the court, when faced with a petition to vacate, was required to dismiss Plaintiff's already-granted 2-1401 petition without prejudice instead. We also decided that, to the extent that the circuit court granted Defendants' motions to dismiss Plaintiff's complaint pursuant to Sections 2-619(a)(4) and/or (a)(9) of the Code, it did so in error because there was no pending complaint to dismiss. By vacating the October 2019 order, the court reinstated the February 2019 order dismissing Plaintiff's complaint with prejudice. Hence, there was no remaining complaint to dismiss in July 2020. We noted, however, that reversing the court's July 2020 dismissal of Plaintiff's refiled complaint did not affect the procedural posture of Plaintiff's underlying claims, which remained dismissed with prejudice pursuant to the February 20, 2019 order.

¶ 16    As a final note, we commented on the irregular conduct of Plaintiff's counsel in seeking to both withdraw from representation of Plaintiff and dismiss Plaintiff's complaint with prejudice, because counsel should have recognized that such a dismissal could act as a bar to Plaintiff pursuing his claims in the future. *See* 735 ILCS 5/13-217 (West 2020). Furthermore, if Plaintiff had definitively decided he no longer wished to pursue his claims, counsel would seemingly have no need to withdraw. However, as the record contained neither a written motion to withdraw as counsel or to dismiss the complaint, nor a transcript of the proceedings on February 20, 2019, we lacked information on counsel's or Plaintiff's reasoning.

¶ 17                    The Amended Section 2-1401 Petition

¶ 18    On August 4, 2021, Plaintiff filed a second Section 2-1401 petition, titled "Plaintiff's Amended Section 2-1401 Petition to Vacate February 20, 2019, Entered Order Voluntarily Dismissing Case with Prejudice" ("Amended Petition.") On October 12, 2021, Egan and Presence

filed combined motion to dismiss the Amended Petition pursuant to Section 2-619.1, arguing (1) that the petition was untimely filed after the two-year limitations period provided in 735 ILCS 5/2-1401(c) (Petition "must be filed not later than 2 years after the entry of the order or judgment" sought to be vacated); (2) that a voluntary dismissal order cannot be vacated pursuant to Section 2-1401 unless Plaintiff was granted leave to set aside the dismissal order at the time the order was entered; and (3) Plaintiff failed to establish any of the requirements for relief pursuant to Section 2-1401.

¶ 19    The circuit court heard oral argument on the motions to dismiss on January 28, 2022, and entered an order granting the motions on January 31, 2022. The order read that the court granted the motions for the reasons given at the January 28 hearing. At that hearing, the court ruled that the Amended Petition was dismissed pursuant to Section 2-619(a)(9) because Plaintiff failed to exhibit due diligence in how the petition was filed, and because Plaintiff could not seek vacatur of an order of voluntary dismissal with prejudice through a Section 2-1401 petition.

¶ 20    Plaintiff now appeals from the dismissal of his Amended Petition. He argues that the circuit court erred in ruling his Amended Petition was not a proper means of vacating the court's February 20, 2019 order that granted the voluntary dismissal with prejudice of Plaintiff's complaint, because such relief was directly provided for on the face of Section 2-1401 and supplanted all caselaw on the subject. He next argues that he exercised due diligence because he did not need leave of court to file a petition that did not contain any substantive changes from his original 2-1401 petition, thus not creating any surprise or prejudice for either defendant. He contends that the Amended Petition was also timely because it related back to the original petition from October 2019. Plaintiff further notes that Defendants received proper notice of the Amended Petition via electronic service, and argues that they waived objections to personal jurisdiction in the proceedings

stemming from the initial petition by making a substantive attack on the petition and moving to dismiss. Finally, Plaintiff argues that the circumstances of the case justified a relaxed application of due diligence analysis because withdrawing counsel did not inform Faize Issa that the circuit court would not dismiss his case after counsel withdrew, but would instead allow him time to obtain new counsel and effectuate service on Defendants. In further support of his confusion, Plaintiff points to the original 2017 suit, which was dismissed for want of prosecution because of counsel's error. He also claims that it was only after he obtained his present counsel that he learned that a voluntary dismissal with prejudice could be vacated.

¶ 21    Defendants argue that the circuit court had discretion to make a determination on the facts of the case that Plaintiff failed to exercise due diligence because he waited almost eight months after the February 2019 dismissal of his refiled case before filing a 2-1401 petition, pursued nearly a year of litigation rather than correctly serving Defendants with the petition, and eventually served Defendants with the Amended Petition more than two years past the time allowed for filing a petition under Section 2-1401(c). They further argue that the Amended Petition is not saved by the relation-back doctrine because it cannot relate back to an unserved petition that did not invoke the jurisdiction of the circuit court. Finally, they contend that the circuit court correctly determined that Section 2-1401 cannot be used to vacate a voluntary dismissal order, and that Plaintiff was incorrect in claiming that the statute supplanted common law to allow for such relief.

¶ 22            Motion to Strike or Disregard Portions of Egan's Response Brief

¶ 23    On August 22, 2022, Plaintiff filed a motion asking the Court to strike or disregard two portions of Egan's brief. The first is a paragraph in Egan's Statement of Facts section that reads:

> Rather than resolve the issue by serving Defendants with his petition, Plaintiff engaged in extensive litigation with the goal of avoiding the consequences of his mistake, beginning with a motion for reconsideration, which the circuit court denied. Plaintiff then appealed the circuit court's order vacating the October 17, 2019, order to this Court.

Plaintiff argues that this entire paragraph is improperly argumentative for the appellee's statement of facts, pursuant to Ill. Sup. Ct. R. 341(i) and 341(h)(6). The second portion is an attachment included in the appendix attached to Egan's brief, which consists of the Cook County Clerk of the Circuit Court's Electronic Docket Search case information summary of a lawsuit (docketed as 2019 L 002344) Plaintiff filed on March 1, 2019 against his former counsel, claiming that the circuit court's dismissal of Plaintiff's original 2017 action for want of prosecution and voluntary dismissal of the refiled 2018 complaint resulted from former counsel's legal malpractice. Plaintiff now argues that this attachment, as well as references to the lawsuit in Egan's brief, constitutes an improper attempt to supplement the record.

¶ 24                                          ANALYSIS

¶ 25                                    Standard of Review

¶ 26    In order to be entitled to relief under 735 ILCS 5/2-1401, the petitioner must set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the Section 2-1401 petition. *Fiala v. Schulenberg*, 256 Ill.App.3d 922, 929 (1st Dist. 1993). We review the dismissal of a Section 2-1401 petition *de novo* where the petition raises a question of law, or under an abuse of discretion standard where the court denies the petition after determining on the facts that the plaintiff failed to exercise due diligence. *Cavalry Portfolio Services v. Rocha*, 2012 IL App (1st) 111690, ¶ 10.

¶ 27    The present matter raises both a question of law and a question of fact. We review the circuit court's holding that a Section 2-1401 petition cannot be used to vacate a voluntary dismissal order *de novo*. We review its determination that Plaintiff failed to demonstrate due diligence in pursuing his Section 2-1401 petition for an abuse of discretion.

¶ 28 Whether the 2-1401 Petition Was a Proper Means for Vacating the Dismissal Order

¶ 29 Plaintiff argues that the language of Section 2-1401 permitted on its face the relief he sought, where it states in relevant part:

> Relief from final orders and judgments, after 30 days from the entry thereof, may be had upon petition as provided in this Section. Writs of error *coram nobis* and *coram vobis*, bills of review, and bills in the nature of bills of review are abolished. All relief heretofore obtainable and the grounds for such relief heretofore available, whether by any of the foregoing remedies or otherwise, shall be available in every case, by proceedings hereunder, regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered. 735 ILCS 5/2-1401(a) (West 2020).

He claims that the statute supplanted the common law rule expressed in *Weisguth v. Supreme Tribe of Ben Hur*, 272 Ill. 541, 543 (Ill. 1916) ("In case of a voluntary nonsuit upon motion of a plaintiff the court has no power to set aside the order of dismissal and reinstate the cause, unless at the time the nonsuit is taken leave is given the plaintiff to move to set it aside.") Plaintiff emphasizes that Section 2-1401 allows for "[a]ll relief" to be available "in every case *** regardless of the nature of the order or judgment from which relief is sought," and this does not exclude relief from a final order granting a voluntary dismissal with prejudice.

¶ 30 Plaintiff alternately argues that under the common law rule expressed in *Weisguth*, a "deliberate or voluntary act" by the plaintiff was required for the court to deny the relief of setting aside the dismissal order. *Id*. ("If a plaintiff by his deliberate and voluntary act secures the dismissal of his suit, he must be held to have anticipated the effect and necessary results of this action, and should not be restored to the position and the rights which he voluntarily abandoned.") Plaintiff claims that the record does not show any deliberate or voluntary act on his part that led to the voluntary dismissal of his case.

¶ 31 Defendants argue that Section 2-1401 does not present a change to the rule at common law that a voluntary dismissal generally cannot be vacated beyond 30 days after entry of the dismissal

order; rather, Section 2-1401 was merely a substitute for the common law writ. *See Warren County Soil and Water Conservation District v. Walters*, 2015 IL 117783, ¶ 35 ("Consistent with the underlying history, this unambiguous statutory language plainly demonstrates the legislature's intent to abolish the common law writ and substitute it with section 2-1401. Essentially, the legislature intended section 2-1401 to operate as the statutory analog to the common law writ.") Defendants further note that there have been only limited exceptions to the rule in *Weisguth*, and none of those exceptions apply to the present matter. *See Weilmuenster v. Illinois Ben Hur Construction Co.*, 72 Ill.App.3d 101 (5th Dist. 1979) (holding that the *Weisguth* rule did not prevent the court from vacating a dismissal agreed to by both sides); *Layfield v. Village of University Park*, 267 Ill.App.3d 347 (3d Dist. 1994) (holding that the dismissal of plaintiff's case was more akin to a dismissal for cause rather than voluntary dismissal, and the trial court therefore had power to vacate it); *Hawes v. Lurh Bros., Inc.*, 212 Ill.2d 93 (2004) (holding that 735 ILCS 5/2-1203[3] superseded the *Weisguth* rule by allowing the trial court to consider a motion to vacate a voluntary dismissal filed within 30 days).

¶ 32    In the present matter, the voluntary dismissal order Plaintiff seeks to vacate was entered on February 20, 2019. He filed his initial Section 2-1401 petition on October 2, 2019, which was granted on October 17, 2019 in an order that was then vacated on July 15, 2020, solely on the grounds that Plaintiff failed to properly serve Defendants. Plaintiff attempted to appeal from that order before he attempted to effectuate proper service on August 4, 2021, when he filed his Amended Petition. In filing his petition pursuant to Section 2-1401, Plaintiff recognizes that he is seeking to vacate an order entered more than 30 days from the filing of his petition. Therefore, he

---

[3] Pursuant to Section 2-1203, a party may "file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief" within 30 days after entry of the judgment or within the time allowed by the court. 735 ILCS 5/2-1203(a) (West 2020).

must show that the relief he seeks—vacatur of a voluntary dismissal with prejudice more than 30 days after the entry of the judgment—is available under Section 2-1401. This is contrary to the rule that, after 30 days have passed since the entry of a voluntary dismissal, and if the court did not grant the plaintiff leave to move to set aside the dismissal at the time of voluntary dismissal, the court has no power to reinstate the case. *See Cesario v. Board of Fire, Police and Public Safety Commissioners of the Town of Cicero*, 368 Ill.App.3d 70, 72 (1st Dist. 2006) (citing *Hawes*, 212 Ill.2d at 93; *Layfield*, 267 Ill.App.3d at 349; *Weisguth*, 272 Ill. at 543).

¶ 33    We agree with Defendants and with the circuit court that a Section 2-1401 petition does not allow for the vacatur of a voluntary dismissal order under the present facts. Plaintiff is incorrect in his proposed explanation of the purpose of Section 2-1401. As our supreme court explained in *Warren County*, Section 2-1401 did not represent a deviation from the general rule against vacating voluntary dismissals that existed at common law—the change that the legislature intended was merely to codify into statute what had previously been a common law writ. *Warren County*, 2015 IL 117783, at ¶ 35 ("[T]he legislature intended section 2-1401 to operate as the statutory analog to the common law writ.")

¶ 34    Plaintiff also attempts to compare the relationship between Section 2-1401 and relief available at common law to 735 ILCS 5/2-1203(a), which did supersede common law by allowing for the filing of a motion to vacate a voluntary dismissal within 30 days of the entry of the order. *Hawes*, 212 Ill.2d at 105-06 (Holding that a voluntary dismissal is a final judgment for the purposes of Section 2-1203(a) and the trial court had jurisdiction to hear plaintiff's motion to vacate such order). The court explained that the general rule at common law was that a court lacked the power to set aside a voluntary dismissal and reinstate the case unless, at the time of non-suit, the court granted the plaintiff leave to move to set it aside. *Id.* However, past the 30-day period, this statutory

exception does not apply; in enacting Section 2-1203, the legislature did not do away with the general rule that the circuit court loses jurisdiction over a case 30 days after it enters a voluntary dismissal order. *See Eighner v. Tiernan*, 2021 126101, ¶ 24; *Cesario v. Board of Fire, Police and Public Safety Commissioners of the Town of Cicero*, 368 Ill.App.3d 70,72 (1st Dist. 2006) ("Once the 30-day period [following a voluntary dismissal] has elapsed, the court has no power to reinstate the cause of action, unless the court granted the plaintiff, at the time of the voluntary dismissal, leave to move to set aside the dismissal.")

¶ 35   In the present matter, the record contains no indication that the circuit court granted Plaintiff leave to move to set aside the voluntary dismissal. We also have not been presented with any other authority that would support a deviation from what is allowed under common law, as codified in Section 2-1401.

¶ 36   As a final note, we recognize our earlier comment in Plaintiff's prior appeal, regarding withdrawing counsel's confusing choice to simultaneously move to voluntarily dismiss the case with prejudice. However, with no transcript or written order in the record against which to review the circuit court's decisionmaking in granting the motion, and in light of the fact that Section 2-1401 does not offer Plaintiff any relief from being bound by the actions of his then-counsel, we cannot disregard the fact that Plaintiff is bound by the decision of his then-counsel in seeking voluntary dismissal. Plaintiff raises this issue in an attempt to characterize the voluntary dismissal as effectively being involuntary as to Plaintiff himself, as he took no action to obtain a voluntary dismissal and claims he did not understand what was happening during the February 2019 hearing. However, this neither excuses him from the actions of his attorneys, nor allows us to ignore the substance of the circuit court's order; this argument fails to place the circumstances of this matter on the level of any of the limited exceptions our courts have found to the *Weisguth* rule.

¶ 37    Reviewing *de novo* the circuit court's holding that Section 2-1401 does not provide the relief sought by Plaintiff, namely the vacatur of a voluntary dismissal order, we agree with the circuit court and affirm its denial of Plaintiff's Amended Petition on these grounds.

¶ 38                         <u>Whether Plaintiff Exhibited Due Diligence</u>

¶ 39    The transcript of the January 28, 2022 hearing shows that, in addition to holding that a Section 2-1401 petition is not a proper means to vacate a voluntary dismissal, the circuit court also granted Defendants' motion to dismiss the Amended Petition based on a finding of a lack of due diligence. The court recognized that Plaintiff had previously been proceeding *pro se*, but that the court must hold him to the same standard as an attorney in requiring him to comply with the rules, and under "all the facts regarding how [the Amended Petition] was filed," he failed to exercise due diligence. Having determined above that the circuit court properly denied the Amended Petition on the basis that Section 2-1401 did not provide Plaintiff the relief he sought, we nonetheless review the second portion of its decision as well.

¶ 40    Due diligence pursuant to Section 2-1401 requires that the petitioner have a reasonable excuse for failing to act within the appropriate time; the purpose of Section 2-1401 is not to allow the petitioner relief from "the consequences of his own mistake or neglect, and he is not entitled to relief unless he shows that, through no fault or negligence of his own, the error of fact or the existence of a valid defense was not made to appear to the trial court." *Fiala*, 256 Ill.App.3d at 929. The petitioner must show that "his failure to defend is the result of an excusable mistake and that under the circumstances, he acted reasonably and not negligently when he failed to resist the judgment." *Id.* The court abuses its discretion in making the fact-dependent determination of whether the petitioner displayed due diligence where its decision is "arbitrary, fanciful,

unreasonable, or where no reasonable person would take the view adopted by the trial court." *Harris Bank, N.A. v. Harris*, 2015 IL App (1st) 133017, ¶ 63.

¶ 41 At the hearing, Defendants argued that Plaintiff was present in court when his case was voluntarily dismissed on February 20, 2019, and a few days later, on March 1, 2019, he filed a legal malpractice suit against his former counsel both for the dismissal for want of prosecution of his 2017 case and the voluntary dismissal of his refiled 2018 case. This indicates that he was aware of not only the voluntary dismissal, but of the possibility that his former counsel should not have sought a dismissal. Yet he did not seek vacatur of the dismissal until October 2, 2019, approximately seven months later. Even then, he failed to serve Defendants with his Section 2-1401 petition. Defendants noted that Plaintiff did not serve either party until he filed his Amended Petition in August of 2021.

¶ 42 The due diligence requirement for a party filing a Section 2-1401 petition is not intended to excuse a petitioner from his own mistake or negligence, and he is not entitled to relief unless he shows that, "through no fault or negligence of his own, the error of fact or the existence of a valid defense was not made to appear to the trial court." *Smith v. Airoom, Inc.*, 114 Ill.2d 209, 222 (1986) (quoting *Brockmeyer v. Duncan*, 18 Ill.2d 502, 505 (1960)). The petitioner must show that "his failure to defend against the lawsuit was the result of an excusable mistake and that under the circumstances he acted reasonably, and not negligently, when he failed to initially resist the judgment." *Id*. Furthermore, litigants are generally bound by the mistakes or negligence of their counsel. *KNM Holdings, Inc. v. James*, 2016 IL App (1st) 143008, ¶ 22; *Ameritech Publishing of Illinois, Inc. v. Hadyeh*, 362 Ill.App.3d 56, 60 (1st Dist. 2005). A litigant is responsible for following the progress of his case, and he is bound by his attorney's actions. Section 2-1401 does not relieve him of his counsel's negligence. *KNM Holdings*, 2016 IL App (1st) 143008, ¶ 22.

¶ 43    We have found a lack of due diligence where petitioners' counsel filed a Section 2-1401 petition a month after default judgment was entered but failed to properly present the motion to the court, and the defendant petitioners claimed not to have known of the default judgment until approximately seven months later. *Id.* at ¶ 24. Petitioners then waited 17 more months after learning of the judgment before they moved to vacate it, filing their petition almost two years after entry of the order. *Id.* We did not excuse the petitioners' delay despite their assertion that they were in contact with counsel regarding the status of their case, and counsel misled them about the status of the first petition to vacate, finding that it was incumbent upon the petitioners to follow their case, that even if counsel did not inform them of the default, they were alerted to the judgment when the opposing party attempted to collect on the judgment, and there was no excuse for waiting nearly two years to properly file a petition for relief from the judgment. *Id.* at ¶¶ 25-26.

¶ 44    Furthermore, we rejected the petitioners' argument that equitable considerations necessitated relaxing the due diligence requirements, despite noting that the circuit court may relax the due diligence requirements in light of equitable considerations in certain limited circumstances. *Id.* at ¶ 27 (citing *Warren*, 2015 IL 117783 at ¶ 51; *Smith*, 114 Ill.2d at 225). However, those limited circumstances have occurred where there was evidence that the plaintiff fraudulently procured or concealed the judgment, or other unusual circumstances making the enforcement of the judgment unjust. *Id.*; *see also NP SCH MSB, LLC v. Pain Treatment Centers of Illinois, LLC,* 2021 IL App (1st) 210198, ¶¶ 25-26; *Pirman v. A & M Cartage, Inc.*, 285 Ill.App.3d 993, 1003 (1st Dist. 1996); *European Tanspa, Inc. v. Shrader*, 242 Ill.App.3d 103, 108 (2d Dist. 1993); *Halle v. Robertson*, 219 Ill.App.3d 564, 162 (2d Dist. 1991); *Bonanza International, Inc. v. Mar-Fil, Inc.*, 128 Ill.App.3d 714, 719-20 (2d Dist. 1984).

¶ 45    For example, in *Bonanza*, the court on appeal determined that considerations of justice and good conscience required vacatur of the default judgment against the defendants despite a lack of finding of due diligence where the defendants were not given notice of the plaintiff's motion for default judgment, the hearing on damages, or the order of default judgment, and did not learn of the judgment until the plaintiff served them with citations to discover assets, over 30 days after the entry of the judgment. *Bonanza*, 128 Ill.App.3d at 715-16. Furthermore, the defendants were determined to have validly presented arguments that called into question the truth and validity of an affidavit that the plaintiff submitted to the trial court in support of the amount of damages it sought, and that the reason for the defendants' failure to respond to the initial complaint was that the plaintiff's president falsely told them that they did not need to, because the plaintiff did not intend to pursue the case. *Id.* at 718-20. The court also noted that, after to failing to properly notify the defendants of the judgment, the plaintiff waited over 30 days to serve them with the citations to discover assets; while not enough on its own to prove unfair or unconscionable conduct, it "cast a cloud on the proceedings" because the defendants could not make use of the more relaxed standards applicable to vacating a default judgment within 30 days of its entry. *Id.* at 720.

¶ 46    We also determined that equitable principles warranted excusing the defendants' lack of due diligence in *Pirman*, where the defendants argued that they had a meritorious defense that would have prevented entry of default judgment against them, and the circumstances under which they failed to timely raise that defense warranted excusing their lack of due diligence. *Pirman*, 285 Ill.App.3d at 994-95. They argued that they had promptly provided certain documents to an insurance broker with the expectation that the broker would forward them to their insurance carrier, which would provide the defense, and their employer made several inquiries to the broker regarding the matter and was assured that the case was being handled. *Id.* at 996-97. However, the

broker forwarded the documents to the wrong office and the defendants did not learn of this error until the entry of default judgment. *Id.* at 1004-05. We found that the trial court was within its discretion to vacate the default judgment because this was "necessary to effect substantial justice." *Id*. at 1005.

¶ 47    Conversely, we found that the circumstances did not warrant excusing a lack of due diligence in *NP SCH MSB*, where, contrasting the facts to those in *Bonanza*, we determined that where the defendants had notice of the prove-up hearing following entry of default judgment, and their defense was known to them prior to the entry of the court's order awarding damages to the plaintiff. *NP SCH MBS*, 2021 IL App (1st) 210198 at ¶ 28. We held that where defendants could readily have discovered the matter asserted as the basis for their petition to vacate, there was no reason to relax the due diligence requirement. *Id*. (quoting *Goncaves v. Saab*, 184 Ill.App.3d 952, 958 (1st Dist. 1989)). We further found that the defendants had copies of the plaintiff's prove-up affidavit prior to the prove-up hearing, and could have challenged the statements in the affidavit before the court entered judgment based on those statements, but they failed to do so. *Id*. at ¶ 28. This further did not warrant relaxing the due diligence requirement based on the equities. *Id.*

¶ 48    We also declined to relax the due diligence requirement in *Goncaves*, where the plaintiffs argued that, after deposing a material witness to their medical malpractice claims, they had evidence that would have prevented the entry of summary judgment against them. *Goncaves v. Saab*, 184 Ill.App.3d at 955. The plaintiffs argued in their Section 2-1401 petition that the witness's testimony was not available at the time that the court heard the defendant's motion for summary judgment. However, we found that the record showed that the plaintiffs had several months to identify and depose the witness, a physician who treated the decedent. *Id.* at 957-58. The plaintiffs deposed the defendant more than seven months prior to the entry of summary judgment, and we

determined upon review of the record that the identity of this material witness should have been clear to the plaintiffs after that deposition; we further noted that there were medical records signed by this witness, and that he was identified as having acted negligently by the plaintiffs' expert in his report, prepared over six months prior to the entry of summary judgment. *Id*. Additionally, the plaintiffs amended their complaint to add this individual as a defendant over five months prior to the entry of summary judgment. *Id*. at 958. The plaintiffs argued that they were unable to discover the identity of this material witness sooner due to the defendant's deceptive conduct during his deposition; we nonetheless found that they had ample opportunity and sufficient information to locate and depose the material witness, challenge the alleged false testimony given by the defendant, and present their evidence prior to the court's ruling. *Id*. Instead, they waited approximately a year after entry of judgment to depose this witness. *Id*. at 955.

¶ 49 We emphasized that a Section 2-1401 petition "allows a party to bring before the court matters unknown to both the parties and the court at the time of judgment which would have precluded its entry," and that while the petitioner is generally required to show that the failure to discover and present his grounds for relief was not the result of his own lack of diligence, this requirement is not rigidly enforced "where actual fraud or unconscionable conduct has played a part in the rendering of the judgment from which relief is sought." *Id*. at 956.

¶ 50 In the present matter, we find sufficient support in the record for the circuit court's determination that Plaintiff failed to exercise due diligence. We further do not find any facts in the record that would support a finding of fraudulent concealment or misrepresentation on the part of Defendants or of Plaintiff's withdrawing counsel that would have prevented Plaintiff from being aware of the status of his case, including the voluntary dismissal on February 20, 2019. Plaintiff does not deny being present at the hearing during which the court granted Plaintiff's former

counsel's motion to withdraw, and the motion to voluntarily dismiss the re-filed case with prejudice. He was aware of the status of his case from the moment that the court issued its ruling, and had no justification for not acting promptly on this information. Plaintiff was aware enough of the dismissal order and of the potential for his former counsel's handling of this case to have been negligent to file a legal malpractice suit against counsel a mere nine days after the court dismissed his case; there is no reason given why he waited over seven months to file his initial Section 2-1401 petition. Nor is there reason given as to why, when the circuit court reversed its granting of that petition in July 2020 because Plaintiff failed to serve Defendants, Plaintiff waited over a year to file and properly serve his Amended Petition, after his attempts to move for reconsideration and then appeal the circuit court's denial failed. He furthermore cannot, and does not, claim that the dismissal was hidden from him or that he otherwise was unable to learn of it for any amount of time. His argument in his Amended Petition is that his former counsel did not explain to Plaintiff that if he withdrew from his representation, the court would give Plaintiff time to obtain new counsel; therefore, even though Plaintiff attended the hearing, he did not understand that his case could have survived and he could have proceeded with new counsel rather than asking the court to dismiss the case at that time. However, Plaintiff does not state that he made any attempt to prevent the dismissal of his case, to inquire why his former counsel was seeking voluntary dismissal, or any other step to preserve his suit, despite being aware of what was occurring.

¶ 51    We do not know and decline to speculate on why Plaintiff's former counsel chose to move for voluntary dismissal, or what alternatively might have happened had Plaintiff been given time to find new counsel and continue litigating his re-filed case. However, we do know that Plaintiff was aware that his case was being dismissed. Plaintiff presents no authority that allows for relaxing the due diligence requirements for non-attorney litigants compared to those represented by

counsel. On the contrary, litigants are bound by the mistakes or negligence of their counsel. *KNM Holdings*, 2016 IL App (1st) 143008 at ¶ 22. Unlike instances where we excused a lack of due diligence, this is not a situation in which Plaintiff was regularly checking with his former counsel about the status of his case, including the effect that counsel's withdrawal would have on the matter, and counsel either failed to respond to Plaintiff's inquiries, or made false assurances to Plaintiff, or made some mistake of which Plaintiff was not aware that jeopardized Plaintiff's case. We therefore find that the circuit court did not abuse its discretion in finding a lack of due diligence in Plaintiff's failure to timely preserve his claims or challenge the dismissal of his refiled case. We further find no equitable justification for relaxing the due diligence requirement under the circumstances.

¶ 52                   Plaintiff's Motion to Strike or Disregard Portions of Egan's Brief

¶ 53    Finally, Plaintiff filed a motion to strike or disregard portions of Egan's response brief as being in violation of Ill. Sup. Ct. R. 341(h)(6) and (i). Specifically, Plaintiff argues that a portion of Egan's Statement of Facts section is improperly argumentative. That segment reads:

> Rather than resolve the issue by serving Defendants with his petition, Plaintiff engaged in extensive litigation with the goal of avoiding the consequences of his mistake, beginning with a motion for reconsideration, which the circuit court denied. Plaintiff then appealed the circuit court's order vacating the October 17, 2019, order to this Court.

Plaintiff also claims that the Court should strike or disregard the appendix to Egan's brief, which is comprised of the Circuit Court's Electronic Docket Search case information summary of the legal malpractice suit Plaintiff filed against his former counsel on March 1, 2019, as well as all references to the contents of this attachment in Egan's brief. The basis Plaintiff provides for this argument is that this presents an improper attempt to supplement the record by introducing material which is not contained in the record on appeal. *See Regal Package Liquor, Inc. v. J.R.D., Inc.*, 125 Ill.App.3d 689, 691 (1st Dist. 1984) ("Those documents not certified and attached to the

application [for leave to appeal] are therefore not part of the record on appeal and need not be considered, especially in the absence of a stipulation of the parties or a motion to amend the record") (internal citations removed); *see also Jones v. Police Board of City of Chicago*, 297 Ill.App.3d 922, 930 (stating the same).

¶ 54    Rule 341(h)(6) states in relevant part that the appellant's brief shall contain a "Statement of Facts, which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment." Rule 341(i) provides, in part, that if the appellee's brief includes a Statement of Facts, it must comply with Rule 341(h)(6) as well. This Court will not strike any portion of a party's Statement of Facts unless it contains "such flagrant improprieties that it hinders our review of the issues." *John Crane, Inc. v. Admiral Insurance Co.*, 391 Ill.App.3d 693, 698 (1st Dist. 2009). However, if the party's presentation of the facts does not rise to such a level but is nevertheless inappropriate, we may simply disregard any such statements. *Id.*; *see also Lock 26 Constructors v. Industrial Commission,* 243 Ill.App.3d 882, 886 (5th Dist. 1993).

¶ 55    Plaintiff does not specify what exactly is argumentative in the above-quoted portion of Egan's Statement of Facts. In this Court's reading of that section, and without any additional support in Plaintiff's motion, we do not find anything that hinders our review of the issues. We find the mention of Plaintiff's filing of a motion for reconsideration of the circuit court's July 2020 order, the circuit court's denial of that motion, and Plaintiff's appeal of the circuit court's order vacating the October 17, 2019 to be accurately-stated facts. To the extent that Egan speculates on Plaintiff's motives in choosing to pursue this strategy rather than attempt to properly serve Defendants, we take no position on why Plaintiff chose to do so and whether this can be described as "extensive litigation." Our review of the circuit court's decision from which Plaintiff appeals is not motivated by the statements in this particular paragraph of Egan's brief.

¶ 56    Regarding Egan's attached appendix, this Court may take judicial notice of facts not in the record on appeal, if they are readily verifiable and capable of instant and unquestionable demonstration. *Bank of America, N.A. v. Kulesza*, 2014 IL App (1st) 132075, ¶ 21. This includes the decisions of other courts. *Id.* Egan's appendix consists of the case summary of the legal malpractice suit Plaintiff filed against his former counsel shortly after the circuit court granted counsel's motion to withdraw and to voluntarily dismiss Plaintiff's refiled suit with prejudice. We find no basis to strike or disregard mention of facts of which we may take judicial notice. Furthermore, the specifics of the case history in Plaintiff's malpractice suit are not determinative in our decisionmaking on the issues presented on appeal.

¶ 57                              CONCLUSION

¶ 58    For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 59    Affirmed.